UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN PELLICANO,                    :
SUCCESSOR IN INTEREST TO
MICHAEL PELLICANO,[1]               :

        Plaintiff            :     CIVIL ACTION NO. 3:17-698

    v.                              :          (JUDGE MANNION)

THE OFFICE OF PERSONNEL            :
MANAGEMENT, INSURANCE
OPERATIONS, HEALTH                  :
INSURANCE II,
                                    :
        Defendant
                                    :

## MEMORANDUM

Pending before the court is the report of United States Magistrate Judge Martin C. Carlson, which recommends that the defendant's motion for summary judgment (Doc. 110) be denied and the plaintiff's motion for summary judgment (Doc. 120) be granted. (Doc. 125). The defendant has filed objections to the report (Doc. 129-130), and the plaintiff has filed a responsive brief (Doc. 134). Upon review of the record, Judge Carlson's

---

[1] By order dated July 17, 2025, Susan Pellicano was substituted as a party-plaintiff in this case after the unfortunate passing of her husband, Michael Pellicano, on March 1, 2025. (Doc. 124).

report and recommendation will be adopted in its entirety as the opinion court.

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the

- 2 -

findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

This case, which consumed many of Mr. Pellicano's last living days and which has occupied the docket of this court for the better part of a decade, centers around one remaining issue – the failure of the defendant to provide Mr. Pellicano, a disabled quadriplegic, coverage for a replacement shower commode chair.[2]

---

[2] Judge Carlson has provided a fitting condemnation of the injustice suffered by Mr. Pellicano at the hands of health care bureaucracy in this case:

> These longstanding disputes provide a sobering glimpse into the vagaries of our modern health care bureaucracy. Thus, the defendant has refused for years to recognize the medical necessity of a shower chair for this severely impaired quadriplegic despite a treating source consensus that such equipment is called for given the severity of Pellicano's permanent disability, extensive treatment records supporting that opinion, and the fact that such equipment had previously been deemed both medically necessary and covered by Pellicano's prior insurance. Moreover, Pellicano's case illustrates how a bureaucratic decision, once made, becomes immutable. Indeed, it is telling that this litigation has actually outlived Mr. Pellicano, who passed away still trying to obtain some measure of satisfaction from his health insurer over the seemingly straightforward issue of obtaining a shower chair that would facilitate performing essential bodily functions.

(Doc. 125, pp. 2-3).

- 3 -

Mr. Pellicano was a retired federal employee, who suffered a disabling spinal cord injury in 2002, which rendered him a quadriplegic. At the time of the claims presented in this case, he was enrolled in the National Association of Letter Carriers ("NALC") Health Benefit Plan under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §8901, *et seq*. After his accident and as a result thereof, Mr. Pellicano filed various claims seeking coverage for durable medical equipment ("DME") and supplies to accommodate his disability. Some of those claims were granted, some were denied.

On April 19, 2017, Mr. Pellicano filed this action seeking judicial review of five of the administrative decisions by the Office of Personnel Management ("OPM") denying him coverage. Two claims, Claim Nos. Y15205005 and Y15126013, concerned coverage for the cost of a supply of *Enemeez*-brand "mini-enema" products. The third claim, Claim No. Y15035005, concerned coverage for parts and repair of a functional electrical stimulator ("FES") cycle ergometer. The final two claims, Claim Nos. Y15099009 and Y16063002, concerned coverage determinations with respect to a shower commode chair - the first was for parts for Mr. Pellicano's existing chair and the second was for pre-authorization for a new chair to replace his previously approved chair which had worn after almost fifteen years of use.

In response to the plaintiff's complaint, OPM filed motions seeking to dismiss three of the claims and to remand the action as to the others in order to further develop the administrative record for judicial review. After considering OPM's motions, the court dismissed the two claims concerning the cost of the *Enemeez*-brand "mini enema" products as being untimely. The other three claims were remanded for further administrative proceedings. On remand, OPM held to its earlier decisions and again denied Mr. Pellicano's claims relating to the FES cycle ergometer and the shower commode chair.[3]

When the matter returned to this court, the parties filed cross motions for summary judgment as to the remaining three claims. Upon review of the motions, the magistrate judge filed a report recommending that the defendant's motion for summary judgment be granted and the plaintiff's be denied. Considering the deferential standard of review on these

---

[3] In the meantime, in 2018, while the three claims were on remand to OPM, Mr. Pellicano purchased the replacement shower commode chair on his own and submitted charges in the amount of $4,375.00 for reimbursement. *See* OPM Claim No. Y19261007. Mr. Pellicano's claim for reimbursement was denied initially and upon appeal. (Doc. 101, pp. 28-29). Although Mr. Pellicano did not amend his complaint to challenge this claim denial, given his *pro se* status, the court considers the reimbursement claim to be part and parcel of his claim for authorization of the replacement shower commode chair.

- 5 -

administrative claims, the court adopted the report and recommendation and granted summary judgment in favor of the defendant.

Mr. Pellicano filed an appeal to the United States Court of Appeals for the Third Circuit. In doing so, he challenged only this court's ruling as to OPM Claim No. Y16063002, the pre-authorization request for the replacement shower commode chair. In considering the plaintiff's appeal, the Third Circuit affirmed in part and vacated in part. The Third Circuit vacated the court's grant of summary judgment to OPM on Claim No. Y16063002 relating to the pre-authorization claim for the shower commode chair and remanded the action for further proceedings as to that claim, including the possibility of yet another remand to OPM. The court's order awarding summary judgment to OPM on the other claims was otherwise affirmed. *See Pellicano v. Office of Personnel Management*, 2022 WL 621692 (Mar. 3, 2022).

As discussed by Judge Carlson, the Third Circuit set forth the positions of the parties as follows:

> According to Pellicano, his Shower Commode Chair is an utterly necessary piece of specialized medical equipment that permits him to complete a complex and lengthy daily bowel ritual with the assistance of a caregiver.[4] He notes that a previous

---

[4] As a result of his spinal cord injury, Mr. Pellicano suffered from neurogenic bowels. In order to avoid serious health complications, including impaction from failing to void his bowels, he was required to be on a bowel program. Mr. Pellicano and his wife, as his caregiver, were trained by his

*(footnote continued on next page)*

insurer approved reimbursement for his original purchase of such a device in 2003. In 2014, Pellicano applied to NALC for reimbursement of replacement parts for his chair. NALC approved partial reimbursement. In 2015, he sought pre-authorization for the purchase of a new chair. NALC denied the request, determining that the chair was "not a covered item per our Durable Medical Equipment benefits in our Health Benefit Plan brochure."[5] 3d Cir. ECF No. 21-14 at 79. When Pellicano appealed the decision to OPM, NALC argued that the chair was not medically necessary, was a personal convenience item, and was not a covered DME under the Plan's criteria in the brochure. Id. at 87-88. OPM issued a letter upholding the decision. D. Ct. ECF No. 1-1 at 15.

On appeal, the Third Circuit was less than accepting of the reasoning provided by OPM for denying coverage of the shower commode chair for Mr. Pellicano. First, the court discussed the fact that when Mr. Pellicano applied

---

treating physicians on the administration of the program. This program required Mrs. Pellicano to use a patient lift in order to transfer Mr. Pellicano into a shower commode chair. The chair was a tilt-in-space padded high back shower commode chair with lateral supports at the trunk and hips, adjustable arm troughs, adjustable foot rest with calf supports, and straps and wheels. After placing Mr. Pellicano in the chair, his wife was required to digitally stimulate his rectum, after which she would administer a suppository. Mr. Pellicano would then have to be digitally stimulated one or two more times in order to complete the bowel program. Mr. Pellicano remained in the chair afterwards so that Mrs. Pellicano could shower him in order to maintain proper hygiene and avoid any infection. This program took approximately 1 to 1 1/2 hours per day to complete. (Doc. 38, pp. 16-17).

[5] The NALC plan brochure provides that DME is equipment and supplies that are prescribed by your attending physician; are medically necessary; are primarily and customarily used only for a medical purpose; are generally useful only to a person with an illness or injury; are designed for prolonged use; and serve a specific therapeutic purpose in the treatment of an illness or injury. See 3d Cir. ECF No. 21-14 at 55.

- 7 -

to NALC for reimbursement of replacement parts for his chair, NALC approved partial reimbursement for the parts classifying the chair as DME. However, the following year, when Mr. Pellicano sought pre-authorization for the purchase of a new chair, NALC denied the request finding that the chair was not covered DME. The Third Circuit provided:

> [W]hen the District Court remanded this matter to the agency in 2018, OPM asked NALC whether the two shower-commode-chair claims [for the parts and for the replacement chair] referred to the same type of durable medical equipment, and if so, whether the disparate coverage decisions were correct. NALC confirmed that they referred to the same items, and that, despite the difference in result, they were correctly decided. NALC explained that "[w]hen Mr. Pellicano requested a new shower commode chair, rather than simply deny his request, we decided, within our discretion under Section 2.2(b)(2) of our OPM contract, and, as an act of good will for the patient, to provide some level of coverage for the replacement part needed for his existing chair, knowing we were not going to cover a new shower commode chair under the terms of the brochure." 3d Cir. ECF No. 21-3 at 44 (emphasis added). Whatever may be made of this explanation, it simply cannot be true that NALC authorized the replacement parts "when Mr. Pellicano requested a new shower commode chair." As the Administrative Record before us indicates, NALC paid its portion for chair replacement parts in February 2015, see 3d Cir. ECF No. 21-4 at 4, well before Pellicano had filed the request for a new chair in December 2015; thus, the second decision could not have informed the first. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (noting that "post-hoc rationalizations" will not support agency actions).

*Pellicano v. OPM*, 2022 WL 621692, at *2 (3d Cir. Mar. 3, 2022).

- 8 -

The Third Circuit found that, after "OPM acknowledged that its [original] letter decision did not satisfactorily explain why application of the Plan's provisions led to its decision to uphold NALC's denial [of the claim for the shower commode chair]," and requested a remand to develop the record, the reasoning provided by OPM "simply cannot be true." The Third Circuit found that NALC and OPM "has held fast to what is, at best, a confusing explanation which also appears to contradict what it said [previously]". Having found that OPM "offered insufficient reasons" for its decision, the court of appeals found "this part of the agency decision cannot stand."

Further, in denying Mr. Pellicano's claim on the basis that the chair was not a covered DME, the Third Circuit found that OPM "problematically" relied upon advertisements on websites that covered devices such as "deep fryers, sewing machines, and air purifiers," as well as on websites that sold occupational and physical therapy related medical devices, to explain Plan brochure provisions. The Third Circuit observed that it was OPM, not NALC, that first used the website advertisements to explain the terms of the Plan, and that it did so without providing Mr. Pellicano any opportunity to examine or rebut the information.

Finally, the Third Circuit provided that OPM, for the first time, produced an Electronic Claims Manual ("ECM"), "an internal document used to inform

claims analysts about Plan coverage for particular items," which indicated that the [shower commode chairs] are ineligible for coverage as DME. Here, the Third Circuit stated:

> We note that the agency provided a third ground for denial of preauthorization in its October 25 letter: that the 2015 ECM listed Shower Commode Chairs as ineligible for coverage as DME. However, while the harmless-error doctrine provides that we need not vacate an agency decision if the errors "have no bearing on the substantive decision of an agency," we cannot conclude that the errors here were harmless. OPM's decision mentioned the ECM in a single sentence, while it discussed the other rationales at much greater length. It thus appears that the errors did bear on OPM's decision, and we decline to deem them harmless.

*Pellicano v. OPM*, 2022 WL 621692, at *4 (3d Cir. Mar. 3, 2022) (citations omitted).

Considering all of the foregoing, as indicated, the Third Circuit vacated the grant of summary judgment for the defendant and remanded the matter for further proceedings, including another remand to OPM to justify its decision to deny Mr. Pellicano coverage for the shower commode chair.

In accordance with the Third Circuit's directive, an order was issued by this court remanding the case to OPM to conduct further proceedings and provide a more thorough explanation as to why the claim for the shower commode chair was denied. (Docs. 90, 95). Once those proceedings concluded and the matter again returned to this court, renewed cross

- 10 -

motions for summary judgment were filed. (Docs. 110, 120). The pending report was then issued recommending that summary judgment be entered in favor of the plaintiff and against the defendant. (Doc. 125).

The standard of review regarding the plaintiff's challenge to OPM's now third decision denying Mr. Pellicano's shower commode chair has previously been set forth by the court:

> In this case, the plaintiff seeks judicial review of health benefit denial decisions made by OPM under the FEHBA, a federal law governing health benefits claims made by and for federal employees and retirees. The implementing regulations governing FEHBA health benefit plans provide for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. §890.105, and permit aggrieved enrollees to bring civil actions in federal court, but provide that OPM is the sole defendant in these civil actions. *Id.* §890.107(c). Those regulations further state that the scope of judicial review in such action "will be limited to the record that was before OPM when it rendered its decision affirming the carrier's denial of benefits," *id.* §890.107(d)(1), and that relief which may be afforded to a plaintiff shall "be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.* §890.107(c).
>
> Judicial review of OPM's health benefit denial decisions under the FEHBA is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §701 *et seq.* Under the APA, this judicial review is limited to determining whether the agency's actions were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. §706(2)(A).

(Doc. 15, pp. 9-10). Additionally, the Third Circuit has found that "[a]lthough the scope of our review is narrow and deferential, we must confirm that the 'agency [considered] the relevant data and articulate[d] a satisfactory

explanation for its action including a rational connection between the facts found and the choice made.'" *Pellicano v. OPM*, 2022 WL 621692, at *2 (citations omitted).

In his report, Judge Carlson notes that "[d]espite affording OPM the opportunity to reconsider its decision, that agency elected to adhere to the view that as to this profoundly handicapped individual: 'A shower commode chair would be for the personal comfort or convenience of the patient/caregiver,' and would not constitute a medical necessity."[6] (Doc. 125, p. 5) (citations omitted). Considering OPM's decision in conjunction with the administrative record, Judge Carlson finds that the decision to characterize the shower commode chair as a mere convenience for Mr. Pellicano, a quadriplegic, is arbitrary, capricious and an abuse of discretion. This court agrees.

---

[6] It is unclear which position OPM wants to hang its hat on. The Third Circuit noted in its decision:

Before [the first] remand, OPM apparently upheld the denial in part because the chair was not medically necessary. D. Ct. ECF No. 1-1 at 15. On remand, OPM apparently abandoned its position that the chair was not medically necessary. *See generally* 3d Cir. ECF No. 21-3 at 120–22.

*Pellicano v. OPM*, 2022 WL 621692, at *3 (3d Cir. Mar. 3, 2022).

Now, after its second remand, OPM again upholds the denial of the shower commode chair finding that it would not constitute a medical necessity.

- 12 -

Judge Carlson encapsulates the relevant undisputed facts as follows:

> In February of 2016, some ten years ago, Michael Pellicano provided OPM with a cogent, concise explanation of the medical necessity for a shower commode chair, stating that:
>
> > I am quadriplegic due to a spinal cord injury (SCI) and am totally dependent for all care. Do [sic] to my SCI and diagnosis of neurogenic bowel (see Enemeeze LMN), Dr. Lam of the Kessler Institute for Rehabilitation determined (see shower chair LMN) that I need to be transferred into this rehab shower commode chair in order to perform medically necessary daily bowel regimen. Dr. Lam instructed me that it is imperative for my health to maintain this bowel regimen; otherwise, serious complications can occur such as impaction resulting in autonomic dysreflexia (sudden increased high blood pressure). Impaction may also cause the bladder to burst. This daily bowel regimen consists of a caregiver digitally stimulating my rectum, after which a mini Enemeeze suppository is administered. I then have to be digitally stimulated 1 to 2 more times in order to complete the bowel regimen, after which I am showered to maintain proper hygiene. I must spend 1 to 1 1/2 hours in this chair daily in order to perform this regimen; **it is in no way a convenience**.
> >
> > My present rehab shower commode chair, which is 13 years old, is becoming unsafe and needs to be replaced.

(Id. at 58) (emphasis in original).

> Mr. Pellicano's request, in turn, was endorsed by his treating physician, Dr. Mylan Lam, who explained that Pellicano:
>
> > [S]ustained a spinal cord injury which rendered him quadriplegic and dependent for all care of daily living. A shower commode chair is necessary for both management of his daily bowel program and showering.

(Id. at 70, 75-76). Thus, Mr. Pellicano's treating source, who had the closest and most detailed understanding of the severity of his

- 13 -

condition, opined that a shower commode chair was a medical necessity for this severely disabled man.

Dr. Lam's opinion, in turn, was supported by more than 400 pages of treatment notes submitted to OPM. (Id. at 78-772). These physical therapy treatment notes spanned years and graphically described the profound degree of impairment suffered by Mr. Pellicano. According to these treatment records Mr. Pellicano often required moderate to maximum assistance in any physical transfers from one position to another. (Id. at 79, 83, 88, 91, 97, 101, 108, 112, 118, 122, 126, 130, 136, 141, 146, 149, 155, 534). His unaided dynamic short sitting balance, which was essential for independent toileting, was consistently described as poor. (Id. at 79, 83, 91, 97, 101, 108, 112, 118, 122, 126, 130, 136, 141, 146, 149, 155, 164, 215, 379, 400, 411, 425, 440, 454, 466, 478, 491, 503, 519). He was assessed as unable to engage in static or dynamic sitting without assistance. (Id. at 159, 195, 204, 379). Moreover, he was deemed 100% disabled in terms of his activities of daily living, including notably both bathing and toileting functions that the shower commode chair was designed to facilitate. (Id. at 160, 161, 166, 197, 207, 217, 225, 235, 533, 552). He was described a totally "dependent for all self care and mobility." (Id. at 553).

(Doc. 125, pp. 5-7).

In addition to the above medical opinions and treatment records supporting Mr. Pellicano's medical need for the shower commode chair, Judge Carlson points out that the same device that Mr. Pellicano was being denied coverage for as a "convenience" and "medically unnecessary" had previously been deemed medically necessary and covered by his prior insurer.

As discussed by Judge Carlson, in its latest decision, OPM has turned a blind eye to all of the above and has again denied Mr. Pellicano coverage for the shower commode chair now based upon the opinion of Dr. Katherine Herzog, a non-treating, non-examining medical source. (Doc. 101, pp. 773-81). Initially, Dr. Herzog determined that the claim should be denied based on the terms of a 2015 Plan brochure without providing any explanation as to why. In a subsequent opinion, Dr. Herzog stated that a "clinical evaluation of a commode/shower chair should be performed with a focus on the individual's current bowel care routine and transfer ability, goals of the individual and caregiver, and individual functionality, including postural stability, reach and skin integrity." Having stated this, in denying Mr. Pellicano's claim, the only evidence cited by Dr. Herzog actually supports the medical necessity of the device for Mr. Pellicano. That evidence – that Mr. Pellicano had poor static and dynamic sitting and required maximum assistance with transfers – is precisely what the shower commode chair is intended to assist with. Completely ignoring documentation in the administrative record demonstrating that Mr. Pellicano had used the same type of shower commode chair for approximately 15 years with no issues and his doctor's opinion that it was a medical necessity for Mr. Pellicano to have the shower commode chair, Dr. Herzog concluded that "documentation

does not [show] that the patient has the core strength to safely sit in a commode/shower chair." She therefore rendered the chair unnecessary. This nonsensical reasoning then led to the conclusion that the shower commode chair "would be for the personal comfort or convenience" of Mr. Pellicano and was not "medically necessary." This is the opinion OPM chose to rely on in denying Mr. Pellicano the shower commode chair in contravention of extensive documentation in the record which demonstrates that the shower commode chair was a medical necessity for Mr. Pellicano.

Early on in this case, this court entered summary judgment in favor of the defendant citing to the deferential standard of review in these types of administrative cases. On appeal, the Third Circuit disagreed not with the applicable standard, but with the expansive deference given to the defendant in light of the record, and had specific and serious concerns regarding the reasoning behind OPM's denial of Mr. Pellicano's claim. Over four years later and, in this court's opinion, those concerns have yet to be resolved. Instead, as discussed by Judge Carlson and the Third Circuit before him, OPM has "held fast to what is, at best, a confusing explanation" for its decision to deny the claim in this case.

Despite the defendant's objections to the contrary, in rendering this latest decision, it appears that OPM ignored the vast majority of evidence in

- 16 -

the administrative record that deemed the shower commode chair a medical necessity for Mr. Pellicano in favor of the inconsistent and confusing opinion of a non-examining, non-treating doctor. Apparently ignored was the training of Mr. and Mrs. Pellicano by Mr. Pellicano's treating physicians on this specific type of shower commode chair, so that Mrs. Pellicano could assist Mr. Pellicano in performing the basic bodily function of moving his bowels to avoid serious medical complications and taking a shower to avoid infection. Apparently ignored were the opinions of Mr. Pellicano's treating doctors who stated that the shower commode chair was a medical necessity to help avoid the risk of impaction and all of the medical complications that could follow if that occurred. Apparently ignored was the decision of Mr. Pellicano's prior insurer which conceded that the shower commode chair was, in fact, a medical necessity for Mr. Pellicano and provided coverage for the original shower commode chair. Apparently ignored were hundreds of pages of physical therapy notes demonstrating that Mr. Pellicano was exactly the type of patient that these chairs were designed to assist. All of this evidence was apparently ignored in favor of the opinion of Dr. Herzog, who provided an opinion which, as discussed above, makes no sense – it cites evidence which supports the medical necessity of the shower commode chair for Mr. Pellicano – and then recommends denial of coverage based on the

- 17 -

reasoning that the chair is a matter of convenience and not medical necessity. OPM has been give three bites at the apple to provide a consistent, rational explanation for its denial of coverage for the replacement shower commode chair for Mr. Pellicano. After almost a decade, it has yet to do so.

In light of the above, the court agrees with the report of Judge Carlson which finds that, on the current record, the decision to characterize the shower commode chair as a mere "convenience" for Mr. Pellicano, who was a quadriplegic and unable to perform basic bodily functions unaided, is arbitrary and capricious and an abuse of discretion. As such, the defendant's motion for summary judgment will be denied and the plaintiff's motion for summary judgment will be granted. The court will enter summary judgment in favor of the plaintiff in the amount submitted by Mr. Pellicano for the replacement shower commode chair he purchased and sought reimbursement for in 2018. An appropriate order shall issue.

MALACHY E. MANNION
United States District Judge

DATE: 3/31/26
17-698-02

- 18 -